## Stathers, Appellant, *v.* Renz.

*Wills—Devises—"Heirs"—Construction—Rule in Shelley's Case.*

A testator devised to his daughter, Virginia, a certain farm "to have and to hold the same during the term of her natural life, remainder in fee simple to her heirs at law"; he further devised to his son Henry and his wife a certain farm "to have and to hold the same during the term of their natural lives, remainder in fee simple to his heirs at law, in case he should have issue, but in case he should die without issue, then the said tract of land to revert to the heirs at law of my three daughters, Catherine, Susannah and Virginia, in fee simple." *Held,* that while the use of the words "heirs at law" in the devise to Henry showed that testator intended them not to have their technical meaning, the absence of qualification in the use of the same words in the devise to Virginia disclosed the testator's intention that Virginia's heirs should take by descent from her, that the rule in Shelley's Case applied, and Virginia took a fee simple.

Argued Sept. 30, 1915.   Appeal, No. 40, Oct. T., 1915, by plaintiffs, from judgment of C. P. Washington Co., Nov. T., 1913, No. 354, for defendants, on case stated, in case of Catherine Virginia Stathers, Joan Anderson, Henry W. Tustin, Daniel W. Tustin and Fannie Lofink, v. Josephine C. Renz and Mary S. Renz.   Before MESTREZAT, POTTER, STEWART, MOSCHZISKER and FRAZER, JJ.   Affirmed.

Case stated to determine defendants' right to certain real estate.

MCILVAINE, P. J., filed the following opinion:

Daniel Ward in one item of his last will and testament provided as follows:

"Item. I give, devise and bequeath to my daughter Virginia all that portion of the eastern end of my aforesaid 'Home Farm' lying on the Cumberland road, after reserving and excepting the house and lot, situated in the eastern part of said eastern portion of my home farm. To have and to hold the same during the term of her natural life, remainder in fee simple to her heirs at law."

In another item of his will he provided as follows:

"I give, devise and bequeath to my son Henry Ward and his wife, that portion of the farm on which they now reside, known as the 'Mowl Farm,' which lies on the south side of the Clarksville road, said road to be the line of division between the southern and the northern portions of said farm, which is situate and lies in the said township of West Bethlehem in the said county of Washington and State of Pennsylvania. To have and to hold the same during the term of their natural lives, remainder in fee simple to his heirs at law, in case he should have issue, but in case he should die without issue, then the said tract of land to revert to the heirs at law of my three daughters, Catherine, Susannah and Virginia, in fee simple."

Virginia Tustin, nee Ward, in her lifetime conveyed the farm devised to her in the item of the will above quoted, to William F. Renz in 1885, and the defendants in this case hold title under her grantee.

Henry Ward and his wife died without issue and had no children at the time Daniel Ward wrote his will. Virginia Tustin had children at the time Daniel Ward made his will and had children at the time of her decease, and the plaintiffs in this case are her heirs at law.

Did Virginia Tustin under the item of her father's will above quoted take a fee simple estate, or take a fee tail estate, which by statute was enlarged into a fee simple estate, and did her grantee take a valid title under the deed of conveyance which she delivered to him?

Under the item of Daniel Ward's will in which he

provides for his son Henry and his wife, Henry took a life estate by reason of the fact that he died without issue. It is claimed by plaintiffs' counsel that the devise to Virginia Tustin must also be construed as giving her only a life estate. The intention of the testator as to the provision which he was to make for his son Henry and his intention as to the provision he was to make for his daughter Virginia are clearly not the same. The language of the two devises is different, and under well established rules of interpretation does not express the same intention on the part of the testator as to the first taker. The words "heirs at law" in the devise to Catherine are unqualified, and there is nothing in the language of the devise to justify giving to them any other meaning than their technical meaning. The words "heirs at law" in the devise to Henry are qualified by the words "in case he should have issue, but in case he should die without issue, then the said tract of land tó revert to the heirs at law of my three daughters," and the very fact that the testator thus qualified the words "heirs at law" shows that he intended them not to have their technical meaning, but that in this devise they should be understood as referring to particular persons that in the future might be born. In making the devise tó Catherine, had the testator qualified the words "heirs at law" by adding the words "now born or which may hereafter be born to her and living at the time of her death," then it might be argued that the testator by the words "heirs at law" referred to his daughter's children or their descendents and that the words should have the same meaning as in the case of the devise to Henry. But we cannot read these qualifying words into the devise.

The argument that if the words "heirs at law" in Henry's devise were used by the testator to designate particular persons, to-wit: his children or their descendants, that then the same words used in the devise to Virginia must mean children or their descendants,

is answered by the equally effective argument that because the testator qualified the words heirs at law in Henry's devise and did not qualify them in the devise to Virginia, therefore he intended each devise to be taken as complete within itself and to be construed in accordance with its own language. There is no intention on the part of the testator, made apparent by the language of the will, to treat all his children alike by giving to each a particular estate in land devised to them. To Sarah he gives no real estate; to Henry, who was married and without children, he gives a life estate in the land devised to him unless he has issue; and to Catherine, Susannah and Virginia, who were married and had children, he gives a fee simple estate in the land devised to them. This is the intention of the testator as we gather it from the will. Whether any other intention was present in his mind when he made his will or not, we know not, nor would it make any difference if we did, we cannot change his will as written, we can only determine the meaning of the will which has been probated as his last will and testament.

Here we might stop. But in view of the argument of counsel for plaintiffs, it may be well to further say that the words "heirs at law" found in the different paragraphs of Daniel Ward's will cannot under any circumstances be construed as meaning children only. The most that they could be construed to mean would be issue or lineal descendants. The evident purpose of the testator was to give his estate to his children (excepting Mrs. Shidler) that they might pass it on to their lineal descendants. In other words, if Henry had died leaving no children but leaving grandchildren, then the farm devised to him would not have gone to the three sisters' heirs at law who were made devisees over after his life estate. And this being the case, if we are to give uniform interpretation to the words "heirs at law" in Daniel Ward's will, we would have to substitute the word "issue" for the words "heirs at law" in the devise

made to Virginia Tustin. We are of the opinion that what the testator meant was, that he gave his farm, described in the will, to Virginia Tustin and her children to be her heirs at law, she to enjoy the farm during her natural life and they taking from her at her death the fee simple title. In other words, they were to hold under her and not under the testator. Or, to restate the devise, the land was given to her to have and to hold to herself during her natural life, and to descend from her to her children at her death, or, if they were dead, to their children, or to her lineal descendants indefinitely.

Our conclusion therefore is, first, that the words "heirs at law" must mean either her heirs at law generally, or her issue or lineal heirs, or heirs of her body. If the first, then she took a fee simple estate. If the second, then she took an estate tail which by the provisions of the Act of April 27, 1855, P. L. 368, was enlarged into a fee simple estate, and under no consideration can the words "heirs at law" be construed as meaning children (a class of persons described) who took title direct from Daniel Ward, they are words of limitation.

The court entered judgment for defendants on the case stated. Plaintiffs appealed.

*Error assigned* was the judgment of the court.

*Rufus S. Marriner,* with him *James A. Wiley* and *Wiley and Marriner,* for appellants.

*James I. Brownson,* with him *Samuel Amspoker,* for appellees.

PER CURIAM, January 3, 1916:

We agree with the learned court below that Virginia Tustin had an estate in fee in the land in dispute which became vested in the defendants in this case, and the judgment is affirmed on the opinion of the learned trial judge.